UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TENANTS' DEVELOPMENT CORPORATION, and TENANTS' DEVELOPMENT II CORPORATION, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| AMTAX HOLDINGS 227, LLC, and ALDEN TORCH FINANCIAL LLC, | ) ) ) | Civil No. 20-10902-LTS |
| Defendants, | ) ) | |
| TENANTS' DEVELOPMENT II, L.P., | ) ) | |
| Nominal Defendant. | ) ) ) | |

|  |  |  |
|---|---|---|
| AMTAX HOLDINGS 227, LLC, and TAX CREDIT HOLDINGS III, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 20-10911-LTS |
| TENANTS' DEVELOPMENT II CORPORATION, and TENANTS' DEVELOPMENT CORPORATION, | ) ) ) ) | |
| Defendants. | ) ) ) | |

ORDER

December 23, 2020

SOROKIN, J.

Pending before the Court are motions to dismiss in two cases involving substantially the

same facts and similar parties.  In the case filed first, Civil Action No. 20-10902-LTS, Tenants'

Development Corporation ("TDC") and Tenants' Development II Corporation ("TD II") brought

claims against AMTAX Holdings 227, LLC ("AMTAX"), Alden Torch Financial LLC ("Alden

Torch"), and nominal defendant Tenants' Development II, L.P. ("the Partnership").  In a case

filed later the same day, Civil Action No. 20-10911-LTS, AMTAX and Tax Credit Holdings III,

LLC ("TCH") brought claims against TDC and TD II.  Both cases concern 185 affordable

housing units scattered throughout Boston's South End whose development was financed in part

by the Low Income Housing Development Program ("LIHDP"). First Doc. No. 1 ¶ 8[1]; see also

26 U.S.C. § 42.

On May 21, 2020, TDC and TD II moved to dismiss AMTAX and TCH's complaint in

the second action or, in the alternative, to consolidate it with the first action.  Second Doc. No.

10.  AMTAX and TCH opposed.  Second Doc. No. 14.  On June 3, 2020, AMTAX and Alden

Torch moved to dismiss TDC and TD II's complaint in the first action for lack of subject matter

jurisdiction and for lack of personal jurisdiction over Alden Torch.  First Doc. No. 13.  TDC and

TD II opposed, conceding that the Court lacks diversity jurisdiction over the first action but

arguing that the Court has federal question jurisdiction.  First Doc. No. 15.  The Court held a

status conference with the parties on October 28, 2020.  First Doc. No. 23; Second Doc. No. 18.

At the status conference, the Court expressed serious doubt about whether it had subject matter

jurisdiction over the two actions.  AMTAX and TCH asked that the parties be allowed to submit

further briefing on federal question jurisdiction, which the parties timely submitted.  Second

Doc. Nos. 19, 20.  Neither party's briefing on federal question jurisdiction sought a hearing on

---

[1] Citations with "First Doc. No." are to the docket in the action filed first, Civil No. 20-10902-LTS. Citations with "Second Doc. No." are to the docket in the action filed second, Civil No. 20-10911-LTS.

the issues they discussed.  Because the Court concludes that it lacks subject matter jurisdiction over both actions, it now DISMISSES both actions without prejudice.

I.      BACKGROUND

TD II is the nominal owner of a series of affordable housing properties that TDC, a nonprofit entity, has managed for at least 15 years.  Second Doc. No. 20 at 2.  AMTAX, which is controlled by Alden Torch, invested in the properties in exchange for receiving most of the tax benefits under LIHDP.  Id.   The relationship between the parties is governed by a Right of Refusal and Purchase Agreement ("the Agreement"), which provides TDC with a "continuing right of refusal . . . to purchase the Property in the event [TD II] proposes to sell, transfer, assign, or ground lease all or substantially all [its] interest therein."  Second Doc. No. 1-5 ¶ 2(a).  The Agreement also provides that the TDC's purchase price, should it exercise its right of refusal, would be the "lesser of . . . the [third-party offer] price, or . . . the sum of the principal amount of outstanding indebtedness secured by the Property (other than indebtedness incurred within the 5-year period ending of the date of any sale to the Sponsor) and all federal, state, and local taxes attributable to such sale."  Id. ¶ 2(b)(ii).  The parties agree that the latter price, known as the "debt plus taxes" price and referred to by 26 U.S.C. § 42(i)(7)(b), is likely to be lower than the market price.  Second Doc. No. 1 ¶ 27; Second Doc. No. 20 at 3.

A right of first refusal like the one in the Agreement would ordinarily preclude investors from receiving the LIHDP tax benefits of owning the properties, since the economic substance doctrine would make the nonprofit organization the properties' true owner, as the party in a position to realize the economic benefit of their appreciation.  See Homeowner's Rehab, Inc. v. Related Corp. V SLP, L.P., 99 N.E.3d 744, 755 (Mass. 2018).  For that reason, the Internal Revenue Code provides a safe harbor to investors enabling them to receive LIHDP tax benefits

even where the nonprofit organization retains a right of first refusal to buy the properties after the

fifteen years of available tax credits have been claimed.  See 26 U.S.C. § 42(i)(7)(b).  The parties

agree that any right of first refusal involved in their agreement would need to be covered by that

safe harbor since, without the safe harbor, AMTAX and TCH would not have been entitled to

LIHDP tax benefits as a result of their investment.  First Doc. No. 1 ¶ 71; Second Doc. No 1

¶ 46.

On February 28, 2019, AMTAX sent TD II a letter "request[ing] that [TD II] promptly

use their best efforts to obtain a buyer for the Apartment Complex on the most favorable terms

available."  First Doc. No. 1-7 at 2.  On December 17, 2019, after TD II had begun marketing the

properties for sale, AMTAX sent TD II another letter in which it "rescind[ed] and revoke[d] the

exercise of" its option to force the properties' sale because AMTAX had been unaware that TDC

held a right of first refusal.  First Doc. No. 1-9 at 3.  TDC and TD II responded that the right of

first refusal was "a matter of public record" and that they were "not in a position to suspend

marketing efforts."  First Doc. No. 1-10 at 2–3.  On February 10, 2020, TD II notified TDC that

it had received an offer from Community Preservation Partners, LLC to buy the properties for

$51 million and that TDC was entitled to exercise its right of first refusal to buy the properties

for $17,108,380, the "debt and taxes" amount.  First Doc. No. 1-14 at 2–3.  TDC informed TD II

that it intended to exercise its right of first refusal by purchasing the properties for the "debt and

taxes" amount.  First Doc. No. 1-15 at 2.

On May 12, 2020, the parties brought the two actions now at issue.  First Doc. No. 1;

Second Doc. No. 1.  TDC and TD II sought a declaratory judgment that their actions with respect

to the right of first refusal accorded with the Agreement, giving TDC the right to buy the

properties at the "debt and taxes" amount, and brought claims of tortious interference with

contract, violation of Chapter 93A, slander of title, and breach of contract and the implied

covenant of good faith and fair dealing.  First Doc. No. 1 ¶¶ 135–218.  AMTAX and TCH sought

a declaratory judgment that the right of first refusal was void and inconsistent with 26 U.S.C.

§ 42 and that TDC and TD II's exercise of the right of first refusal was invalid or, in the

alternative, that AMTAX and TCH were entitled to an exit tax distribution.  Second Doc. No. 1

¶¶ 115–37.  AMTAX and TCH also brought claims of fraud, breach of contract, tortious

interference with contract, breach of fiduciary duties under various legal theories, and violation

of Chapter 93A violation.  Id. ¶¶ 138–230.

II.      LEGAL STANDARD

Ordinarily, a federal court should resolve challenges to its exercise of subject matter

jurisdiction before proceeding to the merits of a case.  Steel Co. v. Citizens for a Better Env't,

523 U.S. 83, 94 (1998); Donahue v. City of Boston, 304 F.3d 110, 117 (1st Cir. 2002).  TDC and

TD II now take the position that the Court lacks jurisdiction over both actions and seeks their

dismissal.  Second Doc. No. 20 at 2.  AMTAX and TCH concede that the Court lacks diversity

jurisdiction, First Doc. No. 14 at 1, but argues that the Court has federal question jurisdiction

because their declaratory judgment claim—that TDC and TD II's conduct caused the affordable

housing project not to comply with LIHDP's statutory requirements and jeopardized its

eligibility for the program's subsidies—requires the Court to interpret federal law and therefore

raises a federal question.  Second Doc. No. 1 ¶¶ 115–20.  Their brief also appears to concede

that, if the Court has jurisdiction, it is because this case falls into the "'special and small

category' of cases in which a state law cause of action can give rise to a federal-question

jurisdiction because the claim involves important federal issues."  Municipality of Mayaguez v.

Corporacion Para el Desarrollo del Oeste, Inc., 726 F.3d 8, 13 (1st Cir. 2013) (quoting Empire

Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 699 (2006)); see generally Doc. No. 19

(arguing that the Court has jurisdiction using First Circuit cases that discuss jurisdiction over

state-law claims that involve federal issues).  In such cases, "federal jurisdiction over a state law

claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and

(4) capable of resolution in federal court without disrupting the federal-state balance approved by

Congress." Gunn v. Minton, 568 U.S. 251, 258 (2013).

III.    DISCUSSION

AMTAX and TCH contend that "[t]he central question presented in this case is one of

interpretation of federal law: what did Congress intend when it used the term 'right of 1st

refusal' in" 26 U.S.C § 42(i)(7)(A), a question they posit "is presented squarely on the face of"

their complaint.  Second Doc. No. 19 at 1.  They argue that the resolution of that question is

likely to affect "hundreds of other similarly-situated [LIHDP] properties throughout

Massachusetts, and thousands across the nation."  Id.  Indeed, their complaint is replete with

allegations that the right of first refusal, if construed as TDC and TD II construe it, does not fall

within the safe harbor found in 26 U.S.C § 42.  See, e.g., Second Doc. No. 1 ¶¶ 42, 48, 116, 118.

As a result, they argue, the Court has jurisdiction under 28 U.S.C. § 1331, the general federal

question jurisdiction statute, and 28 U.S.C. § 1340, which confers jurisdiction over "any civil

action arising under any Act of Congress providing for internal revenue."  Second Doc. No. 19 at

2.

TDC and TD II respond that "[t]he core dispute here is one of contract interpretation;

specifically, whether TDC's right of refusal . . . was triggered and properly exercised pursuant to

its terms and conditions."  Second Doc. No. 20 at 1.  They argue that the parties do not actually

dispute the meaning of the safe harbor in 26 U.S.C. § 42, but rather only the meaning of the

Agreement, even if the safe harbor's meaning could illuminate the parties' intent in forming the Agreement. Id. at 6–7. Finally, TDC and TD II argue that, because the resolution of this case turns on the language of the Agreement, the Court's decision would not resolve other similar disputes regarding LIHDP properties, since those disputes would not involve the same contract language. Id. at 8–9.

First, this case does not "necessarily raise[]" the federal question of the correct interpretation of 26 U.S.C. § 42. Gunn, 568 U.S. at 258. Resolving the parties' dispute simply does not require deciding whether the Agreement's right of first refusal falls into the safe harbor created by the statute. The parties' dispute centers primarily on whether TDC and TD II acted in accordance with the Agreement when they sought and received an outside offer to buy the properties and then purported to invoke the right of first refusal to allow TDC to buy the properties at the lower "debt and taxes" price. Whether the Agreement permitted this course of action does not depend on the meaning of 26 U.S.C. § 42. The only relevance of that statute is to determine whether, if TDC and TD II's actions accorded with the Agreement, the parties were entitled to the LIHDP tax credits they have received. See Second Doc. No. 20 at 6. If the Court held that TDC and TD II's actions did not accord with the Agreement on a contract-law basis unrelated to 26 U.S.C. § 42, the Court would have no occasion to interpret that statute. Interpreting 26 U.S.C. § 42 simply is not "necessary." Gunn, 568 U.S. at 259.

The meaning of 26 U.S.C. § 42 does appear to be "actually disputed," at least by implication. Gunn, 568 U.S. at 258. AMTAX and TCH allege that the Agreement's right of first refusal has a meaning more limited that TDC and TD II's interpretation and that the broader interpretation would not be covered by the safe harbor. Second Doc. No 1 ¶ 42. TDC and TD II, by contrast, allege that the right of first refusal has the broader meaning and is nevertheless

7

covered by the safe harbor.  First Doc. No. 1 ¶ 71.  Thus, the parties disagree about the meaning

of 26 U.S.C. § 42.

The federal issue of the meaning of 26 U.S.C. § 42 is not "substantial" under First Circuit

precedent.  Gunn, 568 U.S. at 258.  The substantiality inquiry "demands that a federal question

must be not only important to the parties, but important to the federal system."  Municipality of

Mayaguez, 726 F.3d at 14.  An issue may be substantial for either of two reasons:

> First, an issue may be substantial where the outcome of the claim could turn on a
> new interpretation of a federal statute or regulation which will govern a large
> number of cases.  In other words, a case is more likely to be important to the federal
> system as a whole if it presents "a nearly pure issue of law . . . that could be settled
> once and for all" rather than an issue that is "fact-bound and situation-specific" and
> whose holding will more likely be limited to the facts of the case.  Empire
> Healthchoice Assurance, 547 U.S. at 700–701; see also Gunn, 568 U.S. at 261
> (noting that the federal issue in dispute was not important because its resolution
> was unlikely to have any impact on other patent cases).  Second, a federal issue
> may also be substantial where the resolution of the issue has "broader significance
> . . . for the Federal Government."  Gunn, 568 U.S. at 260.

Municipality of Mayaguez, 726 F.3d at 14 (some internal citations omitted).  This case meets

neither test.  First, because the case depends on the specific language of the Agreement and the

parties' actions taken in reliance on that language, the resolution of this case cannot resolve other

cases involving similar, not identical, agreements, parties, and factual histories.  Whether the

Agreement's right of first refusal falls into the statutory safe harbor depends entirely on facts

unique to this case.  Although AMTAX and TCH argue in their moving papers that "this Court's

interpretation of a federal tax provision (not a particular contract) [would be] applicable to

literally thousands of properties participating in the [LIHDP] program across the nation, thereby

requiring uniform federal principles," Second Doc. No. 19 at 8, they offer no evidence that other

LIHDP properties are governed by agreements sufficiently similar to the one at issue here to

raise the same issue, much less that all or even most of the "thousands" of properties have such

agreements.[2]   The case also has no broader significance to the Federal Government.  There is no federal party to the case, nor does the record reveal that the Federal Government has challenged the validity of LIHDP tax credits generated with properties whose ownership agreements include a right of first refusal like the one in this case.

The fourth factor, whether the case is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress," "is concerned with the appropriate 'balance of federal and state judicial responsibilities.'"  Gunn, 568 U.S. at 264 (quoting Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308, 314 (2005)).  Here, the Agreement's interpretation is squarely a matter of state contract law.  Indeed, the Massachusetts Supreme Judicial Court has already adjudicated a dispute that also involved the proper construction of an agreement containing a right of first refusal with respect to an LIHDP property.  See Homeowner's Rehab, Inc., 99 N.E.3d 744.  Because "a federal court must defer when the highest court of a state interprets the state's general contract law," In re Bank of New England Corp., 364 F.3d 355, 365 (1st Cir. 2004), the adjudication of the merits of the parties' contract dispute is properly left to the state courts despite the involvement of a federal statute.

IV.     CONCLUSION

For the foregoing reasons, the Court lacks subject matter jurisdiction over both actions filed by the parties.  Accordingly, the Court DISMISSES both actions without prejudice.  See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").  The pending motions to dismiss, First Doc. No.

---

[2] As the parties continuing to invoke federal question jurisdiction, AMTAX and TCH bear "the burden of proving by a preponderance of the evidence the facts supporting jurisdiction." Padilla-Mangual v. Pavia Hosp., 516 F.3d 29, 31 (1st Cir. 2008) (quoting Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 50 (1st Cir. 1992)).

13, Second Doc. No. 10, neither of which raised as grounds for dismissal the subject matter

jurisdiction issues discussed in this Order, are DENIED AS MOOT.  The Clerk shall enter

judgments of dismissal without prejudice in both actions.


                                        SO ORDERED.


                                         /s/ Leo T. Sorokin
                                        Leo T. Sorokin
                                        United States District Judge